Well the change in this case is it's number 0261 and we'll have the pleasure of hearing from Ms. Mellegar. You may proceed. Certified question. Yes, this is the 2nd certified. Yes, the 2nd of the 2. I thought this is the 3rd. Yes, the 3rd on the 3rd 3rd and 4th on the 3rd and 4th Provena is the appellate. Well, I'll just argue something and we'll deal with it. I just want to know who you want to hear from. You're correct. 3rd and 4th here on the appellate. May it please the court. I would understand if you don't want to hear it from me. You would not be allowed to do that. Counsel, just keep arguing. I forgot the paper. I'll be back. Yes, Your Honor. The trial court erred in ruling that the Illinois Whistleblower Act is a cause of action which stands alone and separate from the Illinois Hospital Licensing Act and is therefore not subject to the IHLA's immunity from claims for civil damages as a result of the acts, commissions, decisions, or any other conduct of a hospital. While they are two separate statutes, there can be an interaction between the two. We know this most clearly from Rockford Memorial Hospital v. Department of Human Rights. In that case, Dr. Rao brought a claim against the hospital. She actually asked the Department of Human Rights to invest against the hospital under the Illinois Human Rights Act. The hospital asked the court to find that the Department of Human Rights could not do so because the immunity provision of the licensing act barred all limits. And the court in Rockford said, We recognize that Section 10.2, that's the licensing act's immunity clause, may effectively abrogate the right of an aggrieved physician to sue based upon causes of action where the only possible remedy is money damages. However, where other possible remedies exist, as is the case under the Human Rights Act, Section 10.2 does not affect the parties' right to pursue them. We adopt the interpretation found in Rodriguez, Erdman, and Levy and recognize that Section 10.2 confers immunity from civil damages, leaving other remedies such as cease and desist orders and reinstatement available or authorized by statute or other law. So the idea that the fact that there are two statutes means that they should be put in silence and one shouldn't touch the other has already been rejected. Instead, the court needs to look to the licensing act itself first and apply standard rules of statutory jurisdiction. I don't understand why that should be the case. The licensing act pre-existed the Whistleblower Act for several years, didn't it? Yes. If the legislature, knowing about all of this litigation of the licensing act, wishes to pass on the immunity permissions of the licensing act to the Whistleblower Act, why didn't they do it? Because they did not need to. It was already there. What do you mean? I'm reading the Whistleblower Act and it's not there. Right. So then what do you mean it's already there? It's already in the licensing act. No, counsel. Yes. My first job was as a legislative draftsman working for the Illinois legislature. I understand acts and statutes and all the rest of this. Justice Turner was a legislator. He understands it even better than I do. So when I tell you something is not part of the act, I mean written in the act, if it's your argument that the legislature intended the immunity provision of the Hospital Licensing Act to be part of the Whistleblower Act, why didn't they include it? Because the licensing act, had they wanted to exempt it, I respectfully suggest had they wanted to exempt it from the immunity provision of the licensing act, they would have said so because Rockford predates both. It goes back to 1995. So as of 1995, there are already decisions that say the licensing act in its earlier iteration applies to other statutes. It applies to other statutes unless specifically exempted. The standard rule of interpretation for a list of exceptions is that the exceptions are limited to those specifically in the statute. And if there is to be another exception, the exception needs to be specifically enumerated. Now it can be specifically enumerated by amending the licensing act, or it can be specifically enumerated in later acts by putting in the later acts, and this doesn't apply to the licensing act. Well, the Rockford decision was in the second district in 1995? Yes, sir. That's not binding upon this court. Why should we follow it? You should follow it for several reasons. The first being that it makes good sense because it is consistent. It is consistent with other cases. Not that, say, this statute applies, that the immunity provision applies to other laws, but that the immunity provision applies to other causes of action of any kind. In Cardwell, the cause of action in Cardwell was not... I don't understand the argument. I don't understand how it can be argued that when enacting a new provision, the Whistleblower Act is a new provision, that the legislature didn't intend it to be a standalone provision with those immunities and those exceptions provided in that act, as opposed to stuff that may be floating around, Illinois-advised statutes elsewhere, unconnected to this new act. Why should we assume that the legislature, when creating this new entity, addressing this new concept of a whistleblower, somehow meant to incorporate, maybe, other provisions from other acts that might address it, when it would be a real easy thing to do, after all, if you were advising the legislature on this, say, you know, there's that immunity provision for the hospital licensing act. Let's put it in all, what, five lines? As opposed to having to argue in front of some appellate court someday, you should infer that that's what we meant. I don't find that persuasive. Why should we accept it? For two reasons. The first being that the Whistleblower Act is not on the same subject as the licensing act. It can tangential, they can intersect on occasion, but they're utterly unrelated. They're not so closely related that we can assume that when the Whistleblower Act was being written, the licensing act was in line. They're separate. The second is... But isn't that cut against your argument that they intended to apply? No, because the other is that at the time a legislature writes an act, they are assumed to know what else is in the law. And if they don't exempt something from what's in the law, then there's no reason to believe that they did not mean the other law to apply. We can't assume that a legislature, when writing a new statute, does so in a vacuum, but must assume that it would when it does so. It does so intending other laws that previously exist to apply unless they state otherwise. Well, but as you argued earlier, and forcefully, the Life Hospital Licensing Act deals with privileged practice at a hospital. It deals with whether that's going to be taken away. It concerns public safety and interests. The Whistleblower Act doesn't address any of that stuff except to refer to, by the way, an employee includes a physician under certain circumstances. Yes. It seems to me that's a broader and different category that the legislature is concerned about here. A physician might be a whistleblower and not have anything to do with privileges at a hospital. That is true. And the other remedies that are available under the Whistleblower Act continue to apply. Other actions by doctors that are being... would still apply. The only place that the licensing act immunity would apply is in peer review, where the legislature already knew that existed when they wrote it. They didn't make an exception. The statutes were not related. And the legislature at the time was making a decision, a second decision. The first decision the legislature made was of primary importance is the health and safety of the patients in the state of Illinois. The decision they made in passing the Whistleblower Act was of significant importance is protecting the public fisc. But there's no reason to believe that in deciding to protect the public fisc, they made a priority of that over protecting the health and safety of the patients in the state. Instead, it's more proper to assume that they continue to believe that to be most important, but that the statutes were so unrelated, there was no reason to specifically exempt the licensing act from the Whistleblower Act. Rather, they already knew that it was there. To believe otherwise is... Well, you could argue that the legislature, in order to give the public full protection, thought the Whistleblower Act was quite important and accomplished that goal. You could, but if you didn't, you would have to assume either that they did not know about the licensing act, and I don't think you can, or you would have to assume that they put the public fisc over the health and safety of the citizens. You think the only purpose of the Whistleblower Act is the public fisc? I think the primary purpose of the Whistleblower Act is to protect the taxpayers of the state of Illinois. Yes. But a lot of whistleblower actions across the country have to do with health and safety. That's true. And there are other considerations. Significant considerations. I will stay corrected. You are right. Well then, isn't the passage of such a law, which includes physicians as employees if they meet that definition, isn't that a safety valve to the extraordinary discretion that has been granted for good purpose to the peer review process? It is one that is general, and I don't think a more general statute would overcome a more specific one. It's also a later statute, which usually prevails over an earlier statute. I mean, there are rules of legislative interpretation that cut both ways. I agree. And so in this case, the rule of legislation of interpretation, the court is going to have to decide is the mere fact that the Whistleblower Act came later enough to overcome the very specific findings of the legislature. Well, I take it you practice in this area. Yes. So what's the most common, if one can say this, peer review issue? Is it drugs, alcohol, incompetence? Yes. Okay. It's not you told on us or you're rude to nurses. Oh, okay. The first three. No, no. I've got to take back my answer. Okay. As somebody who defends hospitals, I would tell you that the most primary purpose, the most common use of peer review is drugs, alcohol, and competence. If you're asking me, rather, what do plaintiffs say the most common use of peer review is, I would say it has nothing to do with drugs, alcohol, and competence. Plaintiffs will tell you it has to do with gender, age, national origin. But not complaining to other authorities that not being a whistleblower. Oh, no. That's also. A whistleblower because of discrimination. Or a whistleblower for many other reasons. Yeah. So if you're asking what the real reason is or what, as a defense attorney, the reason is, yes, it's drug alcohol. But if you're asking me what the other reasons are, the other reasons are. Various things that the plaintiff says. Are what the plaintiff says. And then we get to the question of, well, do we go to trial on that or do we have the immunity offered by the licensing act? By the way, counsel, one aspect of this I wanted to ask you about. The trial court certified for questions in questions three and four are rather different from the certified questions that you presented. You literally disregarded the court's questions and rephrased them and presented this court with entirely new questions. Two questions I have. One, why did you do that? And secondly, what's your authority to do that? I don't think we the questions that are before the court are the questions that were certified by the trial court. We phrased our understanding of them in a way that we thought would most inform and lead into the arguments. But the questions that are before the court remain the questions that the trial court certified. So we are not in any way saying that we can usurp the authority of the trial court in saying, no, no, we don't agree on what the certified question is. It needs to be something different. And if there's any impression that we attempt to do so, I apologize. Well, it certainly looks like you disregarded the court's third and fourth questions, restated them and presented those as the certified questions that this court should be reviewing and responding to. I apologize for that. And there's no question. And I do not contest that the certified question that is before the court is the question that the court has presented and that this court has accepted. So go ahead. Thank you. So in deciding, well, how do we fall? The Whistleblower Act is later. The Licensing Act is more specific. I think that you need to look to the purposes. And when you get into the Licensing Act, the Licensing Act drills down into great detail. It is extraordinarily specific. It says we want to protect one particular action for a very specific purpose. It says we are making some really important findings. One, we are not equipped to review the actions of a peer review committee. Courts are not equipped to review the actions of a peer review committee. The best people to determine the proper method of discipline for a position is a hospital. If we allow for civil remedies, if we allow, if we invite the legislature, court, or a jury into the peer review room, that is going to chill peer review to the point that people's health is being put at risk. Counsel, this is an excellent policy argument, but it has nothing to do with the legislative issue before us. And that is, if this is the policy the legislature wanted to adopt, why didn't they? And especially given all of the activity concerning this very subject, the cases I mentioned earlier, and the amendments, and the rest of this. And the fact that we're dealing with the major players at the Illinois legislature, talking about hospitals and doctors and plaintiffs' lawyers and the like. I just don't see how we can rewrite the statute to include an immunity provision for which there is no reference to the Immunity Act, the Hospital Licensing Act, or the language itself, which would have been very easy to include. This, all the policy you've given is the strong reason why the legislature, if that's what they believe, should have selected. I still can't get over the hump of why didn't they do something to address it directly. And Justice Stegman, I guess the hump I'm having trouble getting over is that I see it in exactly the opposite way. The major players in town, all of the power players, were already aware of Rockford. They were already aware of the existence of a very specific Illinois hospital license. It's hardly a persuasive, dynamic case. It's not a decision of the Illinois Supreme Court. It's not at the same point. It's a general concept about, you know, other provisions are there in the law. Hardly the same thing. But there are other cases as well that find that the licensing act is not specifically limited to the act itself. They go to courts. But the players didn't need to get involved because they already had the licensing act. Because it already existed in specifics, and there was no reason to believe that any of the other acts that followed would chip away at this very focused, very specific act intended to protect the health and safety of the people of the state. If every act that is written after an immunity statute is written must specifically refer back to that immunity statute and say it applies or it doesn't, then that's a rule that I'm not aware of. It may exist, but in all the research I've done on this, I've never run into it. What I've run into instead is rules about legislative interpretation that say the specific overcomes the general. That where statutes are not related, they don't have to necessarily be interpreted to tie into each other. Where they are related, they have to be read together. And in this case, the only way to read them together, if you do want to read them together, if you're saying one must have been done with the other in mind, then we have to read them together. And the way to read them together is not to say one trumps the other. The way to read them together is to say the licensing act immunity continues to apply only to civil damages, and otherwise all remedies available under the whistleblower act continue to exist. That's how you make those two statutes work hand-in-hand. Before you run out of time, did the hospital receive grants from the state? No. I do not believe so. The grants that were received by the hospital, we believe, were federal grants. And then there's also the issue of Medicaid. I don't have any time to get into the issue of Medicaid other than to simply say that Medicaid payments by federal law are owned by the beneficiary and they only go to providers through assignment. And if you look even at what's cited by plaintiff in their brief, if you look at the entire recitation rather than part of it, the assignments, even the part that say for a hospital, the continuation of that is for a hospital by assignment or otherwise. I understand that argument, but I just wanted to clarify there were no grants received from the state. For the purpose of this argument, I think the court has to accept that there were grants received by the state because we are at the motion to dismiss stage. And in all fairness to plaintiff, I think you have to. The reason we still think this is timely, and this is an answer to the court's question, I believe, is because we believe the facts will show that there were no grants from the state and that the only potential state money at issue is Medicaid money, which is why that complex legal question of what is the effect of an assignment would still need to be addressed. Otherwise, we may end up. Thank you. Thank you. May it please the court, counsel. I think what I would like to do is pick up with the Medicaid issue, the state funding where counsel left off. And there's an interesting question that was raised as to whether Medicaid, receipt of Medicaid funds by the hospital constitutes state funding. And counsel has argued that the reason it can't be state funding is because it is paid to the hospital through an assignment of benefits. However, that is not correct. In the Medicaid program, patients who qualify for Medicaid receive the aid. It's medical assistance. They're recipients of the aid. The providers who provide services to Medicaid patients are the enrolled providers in the medical assistance program. They are in privity with the state. They are the ones that receive payment directly from the state for providing health care services. Medicaid patients have no right to receive those monies. And in evidence of that are brief sites to some provisions of the Illinois Administrative Code and in preparation for today I also looked at some of those further provisions. But an example of the type of payment arrangements that occur between the state and hospitals is through diagnosis-related groupings. Say diagnosis-related what? Diagnosis-related groupings. Groupings? It's in 89 Illinois Administrative Code Section 148.20 and .25. It's a system of reimbursement. This is how hospitals are paid. Rather than paying on a fee-for-service basis, they are paid on a per-discharge basis. It's based on a formula. It's the number of the diagnosis that the patient's had and the number of days that the patient was in the hospital. That payment goes directly to the state. And also in the Illinois Administrative Code 148.50a, it explicitly states, this is mandatory language, the department shall pay hospitals for the essential provision of inpatient, outpatient, and clinic diagnostic and treatment services, indicating that the payment goes directly to the hospital. This can be distinguished from a case of private insurance. When I go to Blue Cross Blue Shield, I select a benefit plan, and I pay specific premiums. And as a result of that, I have the benefit to receive health care services, certain type of health care services. When I go to a provider, I assign that benefit to the provider because it's mine. And I can go to any doctor of my choosing. Medicaid patients cannot do that. They can only go to Medicaid-enrolled providers. Well, I can only go to the hospital or physicians covered by my insurance program. Well, you technically can go to out-of-network providers. I can pay cash for it, but if I want to get my provider to pay for it, I'm limited to those doctors and hospitals who are participating in that insurance coverage. Am I not? You are. That's true. Well, how does that differ? Now, maybe I have a broader or different range of providers than a Medicaid patient, but Medicaid patients are limited as am I. That's true. To some extent, it is true. But in the state system, it's aid that is going to the Medicaid recipients. They have no right under any circumstances to receive payment. I've never gotten a check from my medical insurance company either. That's because you assign it to the provider. Yeah, to the provider. In the Medicaid system, the contracts are between the providers themselves and the Medicaid program. And so payment goes directly to them. Well, let me ask you this, Counsel, because what we're talking about here is really a matter of legislative intent. Section 5 of the Whistleblower Act defines employee. And it says any individuals employed on a full-time, part-time, or contractual basis by an employee. And then it goes on to the sentence that's pertinent here. Employee also includes what is not limited to a licensed physician who practices his or her profession in whole or in part, a hospital, nursing home, clinic, or any medical facility that is a health care facility funded in whole or part by the state. Now, if that last clause were not present, clearly that would include the plaintiff here. Correct. But it's been qualified by talking about a medical facility that is a health care facility funded in whole or in part by the state. So the question for this court is, what did the legislature mean by putting that in? What was its purpose in doing that? And why the term funded? Is that a term of art? What are your thoughts about that? My thoughts on that is the reason that specific language is included. They want a nexus to be established between the state funds and the institution that is receiving them. The reason is because the state is concerned about the integrity of its funds. It wants to make sure that those funds are being used for proper purposes, not unlawfully or not in a way that harms patient care. And so for health care institutions, if they're not receiving any form of state funds, then it's really not their concern with respect to the funding. And so that is the specific reason that language was included. Now, I believe that most hospitals in the state of Illinois participate in the Medicaid program and receive some level of state funding unless they, for some reason, lost their Medicaid standing or perhaps an entirely private hospital that's for profit. Well, let me just interrupt you momentarily. Ten years ago, the appellate court wrote that the purpose of the Whistleblower Act was to help employees report violations of state or federal rules, laws, or regulations because the report wrongful conduct or unsafe condition affected the health, safety, or welfare of Illinois residents as a whole. It had nothing to do with questions of just the fiscal integrity of the state. As a matter of fact, the appellate court there is talking about how that wasn't even mentioned as far as its overarching purposes. That was the purpose you cited, and I don't understand why that would be consistent. I think there is more than one purpose to protecting whistleblowers. I believe it has to do with the fiscal integrity, and I also think it has to do with protecting the public, protecting patients. I think for purposes of this definition, specifically including employees, licensed physicians who practice at hospitals who are not traditional employees. They have privileges at hospitals. The reason they included them in here is because physicians are the eyes and ears of these facilities. They're engaged in patient care. They're there every day. They know what's happening, and they know how the... Well, you're exactly right, and I'm also familiar. We have a lot of litigation in this state about who's an employee or who isn't. We have these radiologists working in emergency rooms, and the hospital gets sued. They say, who are these guys? They're independent agents and all the rest of this stuff. Which is why I think that second sentence is there to make it clear that, hey, you know, for purposes of this Whistleblower Act, these radiologists working at this hospital, a physician includes as an item to a physician who practices or is a professional whore in part as a hospital, nursing home, clinic, or medical facility. That would cover everyone, but then they further limited it. That is a health facility funded in part by the state. Now, in fact, we have, in the state of Illinois, health facilities that are state-run or which are funded by the state. Cook County Hospital is an example of one. We have the various state hospitals. We have veteran hospitals that are funded, I think, in Quincy by the state of Illinois. And I'm wondering, the University of Illinois Hospital is clearly funded by the state of Chicago. Those are funded by the state, not just receiving payments for Medicaid people. Right. If we took your interpretation of funded by the state, what wouldn't be included? Well, to respond to your question, I think that the legislator intended this interpretation of state funding to be broad, because it said in whole or in part. So it does include a large class of health care facilities. But the state wants that because they want to be able to protect the public as a whole. Well, let me be more explicit. It seems to me, I'm not an expert on this, but it seems to me that pretty much every health care facility in the state, hospital, nursing home, clinic, or any medical facility, has Medicaid patients. And if Medicaid payments then make it funded, the exception, this last clause, has been rendered meaningless, hasn't it? That is, it's as if the last clause were not there at all. I don't, I don't, I think that the legislature, when they drafted this, they wanted to make sure that every health care facility was covered. And so they, since hospitals and many health care receive facilities except Medicaid patients. Well, here's, I understand what you're saying. And that's my problem. If they wanted to make sure everyone is covered, everyone would be covered if that last clause weren't present. If it just stopped by saying, employee includes, was not limited to a licensed physician, practice his or her possession, profession, whole or in part, a hospital, nursing home, clinic, or any medical facility, you got it covered. Yes. But they didn't stop there. And that's, I'm wondering, give me an interpretation of that latter clause, because it, let me be more clear. It seems like the legislature intended to limit the broad scope of the earlier portion. How did they want to limit it? What did they want to exclude? They wanted to exclude health care facilities that receive absolutely no funds from the state. For example, an ambulatory surgical center that may be privately owned. They probably don't accept Medicaid patients, and many don't. And in those situations, they wouldn't be covered by this. So there are some health care facilities that do not accept Medicaid patients. Only certain, I mean, you have to meet the requirements for participation. You have to be accepted to participate in the program. So there are some facilities that receive absolutely, probably no state funds. In those situations, they're not meant to be protected by this. Because the Whistleblower Act is meant to promote physicians, employees reporting violations. But they're only concerned about violations that affect the state interest. And, you know, this goes back to what I initially said about the state fiscal integrity. They want to make sure that the funds that they are supplying to these institutions are used for the proper purposes. And that's the reason for having... But they're not supplying funds. They're paying for services rendered. That's not the only source of funding that states provide. They also provide grants to specific institutions for programs. What grants are here? In this case, we had alleged grants for implementation of electronic records, for retention of nursing staff. There's a difference. Let me point out in response to Justice Connex to get clarification on this question. This is not review of a motion to dismiss where we have factual records in force. We're answering a certified question. The certified question is simply and only. Is payment to a hospital under assignment from Medicaid recipient, Social Security Act 1902, etc., quote, funding, unquote, by the state? That has nothing to do with any of the other stuff you just started talking to us about. In answering this question, we're just going to answer the question. So what about the question? As Justice Connex points out, essentially under this section, you're paying for services received. How does that constitute funding within the meaning of the whistleblower act? I haven't found any case law on that issue. Funding is not defined in the whistleblower act. So that leads me to believe that that has a rather broad interpretation. Also by the fact that it says in whole and in part. In my opinion, receipt of Medicaid funds that go directly to the hospital is funding. And it's not on a per patient basis. Let me ask the question, which is mine, too. How is that different from payment? How is it different from health alliance paying for my services and my family's medical services they receive at a local hospital or from doctor's office? You know, it's the old duck test. If it looks like a duck, it walks like a duck. It looks like payment. It's not funding. Funding suggests that the state is underwriting the hospital expenses. It's whatever other payments come in, there's a funding mechanism. We're going to give the University of Illinois Hospital in Chicago X millions of dollars a year as part of its funding. My response to that is that in the Medicaid system, it's not a fee for service payment system. They use formulas and different ways to provide funds to the hospital to reimburse them for the services that they provide to the Medicaid system. They have to identify the services. They have to be patients who receive the services. Correct. And those patients, the things those patients receive, get paid for by these payments. Yes, but it's not a, I submit a claim, because patient A came to see me on X date and I provided all these meds to him and I did all this. I'm submitting a bill, send me money for it. With the Medicaid system, the hospital already has a predetermined formula that they treat X number of diabetic patients per year. And the estimated cost for providing care to those patients is this amount. And so we provide this dollar for anticipating that you provide all of those services to patients. Do they ever get audited? Sure, hospitals get audited. Which means that's what they did. But it's a formula. And there's actually, I don't have it with me, but there's a formula that HFS makes a form that the hospital fills out for each diagnosis grouping. And it's not a per patient thing, it's based on numbers. It's not a dollar per dollar payment, it's an estimate based upon us treating 1,500 diabetics this year. Exactly, exactly. Why isn't that payment for the services that we contemplate providing, in which we know that you will check on us to see if we have provided those. Otherwise, the formula's going to change. I hope that they're doing that. They do audit hospitals. In that scenario, I think that for the purpose of the Whistleblower Act, the use of the word funded does not limit receipt of Medicaid payment for services provided to Medicaid beneficiaries. In the absence of any case law, which I haven't been able to define funded and what it means in this context, my interpretation, or Dr. Larson's interpretation, is that funded includes receipt of monies from the medical assistance program. Which is done through various formulas, including diagnosis related groupings. When payments are made to a provider, do those occur only as a result of an assignment from the patient? In the Medicaid system, there is no direct assignment. It is a relationship between the provider who enrolls in the Medicaid program and the state of Illinois. And there is, actually, in the administrative code at section, this is 89 Ill Administrative Code 140.400. This is on payment to practitioners, which is in the physician setting. Payment will be made only in the practitioner's name or a department approved alternate payee. It goes directly to the practitioner. But isn't there an implied assignment? A patient comes in and there is the assumption that because they are eligible, they will receive services. And the services that they receive, even if rounded off into a formula, will be paid for by Medicaid. Medicaid recipients do not have benefits to attend. They are recipients of aid. It's state aid. They are eligible to receive medical services at various Medicaid providers. So it's different than the typical insurance setting where I pay a premium to have certain benefits. So it's a different scheme. There isn't an assignment in the context that I paid a premium and I have my insurance from Blue Cross Blue Shield and I can go to a provider and I sign the right to payment to him. It's a different type of reimbursement. I didn't really get to address the other issue too in depth, but the one thing that I did want to mention is that I think that the definition of employee worth, the fact that the whistleblower act specifically includes physicians as employees and includes them within the protection, it's further evidence that the legislature did not intend the hospital licensing act immunity protection to override the protections of the whistleblower act. Thank you. Thank you, your honors. All payments made on behalf of Medicaid recipients are paid by assignment. There is no payment directly to a hospital. What does that mean when you say they're paid by assignment? Here's what I mean. Anytime a patient, a Medicaid patient goes to a hospital or a physician as part of their paperwork, they assign their benefits to the hospital. Where there's language about a hospital may only be directly paid, the rest of the language is by assignment. That language has to do with what's called a prohibition against reassignment. If a patient assigns their benefits to a doctor and the doctor is an employee of the hospital, the doctor may assign those benefits to the hospital. In other situations, other than those specifically permitted, there is a prohibition against the reassignment. If the patient assigns his benefits to the doctor, that doctor can't then assign his benefits to his lawyer. He can't assign the benefits to his estate. He may only assign the benefits as permitted. The way Medicaid works in a hospital, and I've got to explain DRG too because DRG isn't state. DRG is federal. DRG is the Diagnostic Related Groups, and it's found in 42 U.S.C. 1395 W.W.D. 2. If you start diving into the Social Security Act, you may never come up with it, so I don't suggest you do so. But there are two different forms. When somebody sees a doctor, they use what's called a UB-92. When someone goes to a hospital, they use what's called a CMS-1500. And the CMS-1500 is the form that Medicaid uses, that Medicare uses, that Blue Cross uses, that Anthem uses. Everybody uses the exact same form. For inpatient hospital services, the 1500 looks very, very different from the bill that you get. You will get a bill. You'll get an itemized bill. You'll get $17 for a Tylenol and $35 for an Advil and $1,200 for a bed and all those other things. But all Medicare looks at, all Medicaid looks at, all Anthem looks at, all United looks at, all of them look at the same thing. What was your diagnosis? They pay on a DRG, Diagnostic Related Group. The Diagnostic Related Group defines the reason that you were there. For example, if you were there for an acute myocardial infarction, you would be DRG-280. And whether you were in the hospital for two days or five days, the hospital gets the exact same amount of money. They may get $1,000 from Medicare and $1,200 from Anthem and $11 from Medicaid, but they get the same amount of money. Why do they get the same amount of money? Because the patient assigned their benefits. DRG is not a magic Illinois thing. DRG is how inpatient hospitals are paid. And now there's a move towards outpatient as well. It's all under what's called a prospective payment system. Prospective because we anticipate this many of this DRG. And then at the end of the year, the hospital does a self-audit. And then it's reconciled. And money comes back from Medicaid and money comes back from Medicare. That's called a cost report. But it is based upon the services provided to the individual patients with payments made from the assignment by the individual patients. That's just how it works. Is that funding? It is. The question is, is fee-for-service the same as funding? I don't believe fee-for-service is the same as funding. What did the legislature have in mind when they put in that last clause that I was asking Ms. Milliger about? I believe that they had something much more akin to public hospitals, except that there are other entities which receive state funding that are not specifically public hospitals. What are those? Cook County Hospital may well be a public hospital. While other state facilities may not be officially public hospitals, but they receive state funding. You may well have... I confess I drove over from Indianapolis. I don't have the same knowledge of Illinois' hospital system as I do of other states. But there are... But a hospital could receive a grant from the state to run a clinical trial. It could receive a grant. It did, and that was funded. That would be funding. It could, yes. It could be. It could be, but they may well also receive funding to run a particular wing. You may have a private hospital and a desperate need in the locale for some particular service, and no one's providing it. Am I correct that that's not the issue before us at this point in response to a certified question, that that's a matter for factual allegations and resolutions at the trial court level? I believe that is correct. The question is, is a payment by assignment a payment by the state? Thank you, counsel. On this matter under advisement, thank you for arguing the way that you did in terms of the bifurcation that assisted us. I want to mention also, counsel, I thought you all did a very nice job in this complex and novel case for us, and I want to thank you for your presentations and briefs. Thank you all.